No. 33,079

M. H. LOHR et al., *Appellees*, v. THE FARMERS ALLIANCE INSURANCE COMPANY, *Appellant*.

(62 P. 2d 837)

Opinion filed December 12, 1936.

*Otis S. Allen, George S. Allen, Raymond Briman,* all of Topeka, and *S. C. Bloss,* of Winfield, for the appellant.

*W. L. Cunningham, D. Arthur Walker, Fred G. Leach* and *Wm. E. Cunningham,* all of Arkansas City, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action against the defendant, a mutual fire insurance company, to recover for a fire loss. The policy covered a dwelling and its contents. The case was tried to a jury. Plaintiff recovered and defendant appeals.

Defendant contends the trial court erred in overruling its objection to the introduction of evidence, in overruling its demurrer to plaintiff's evidence and its motion for an instructed verdict, and in refusing to grant a new trial.

The real and only issue involved in the lawsuit is this: Under the circumstances to be narrated, did the fact plaintiff later procured additional insurance with another company avoid his policy with the defendant company? Defendant insists it did. Plaintiff contends it did not. Plaintiff testified the soliciting agent told him at the time the application was made that he was not taking out enough insurance. Plaintiff says he told the agent that he wanted to take out more insurance when he was financially able to do so, but that he desired to give the additional insurance to another company, and that the agent said, "That will be O. K." Plaintiff's evidence was he relied upon that statement of the soliciting agent. Plaintiff also testified:

"I relied upon the agent of the Farmers Alliance Insurance Company to properly fill out the application and get me a policy that would permit me to take out additional insurance."

Plaintiff stated he did not notify the defendant company that he was taking out insurance with another company. He did tell the other company at the time he took out the additional insurance that he had insurance with the defendant company.

Plaintiff's wife testified concerning the occasion when the other insurance was delivered to her home by the agent of the second company: "She looked it over and said, 'You have made no reference of there being other insurance.' She said, 'I don't want that policy unless the other company knows it.'" He (meaning the agent of the second company) then went up and got Mr. Puckett (meaning the new local agent of defendant company), and the two came down and looked over the premises, and Mr. Puckett said:

"There is no reason why the policy cannot stand. . . . There is no question whatever. That place will warrant extra insurance."

Plaintiff's wife testified she did not notify the defendant company of the additional insurance. Puckett in substance testified he and Gilliland, the agent of the second company, sold life insurance together, that he drove by plaintiff's home with Gilliland but never got out of the car, had no talk with Mr. and Mrs. Lohr about any insurance in The National Fire Insurance Company, was not requested to notify the defendant that a policy had been taken out

with that company, and did not know such a policy was ever issued.

The first fact to be noted is that plaintiff's contract was not with a commercial insurance company, but with a mutual company. For a thorough treatment of the fundamental distinctions between such policies and the principles underlying the distinctions, see *Akers v. Farmers Alliance Ins. Co.*, 118 Kan. 241, 234 Pac. 956; *Kennedy v. Farmers Alliance Ins. Co.*, 127 Kan. 768, 275 Pac. 214; *Jackson v. Republic Mutual Fire Ins. Co.*, 138 Kan. 571, 27 P. 2d 296. Mutual companies have statutory authority to make valid bylaws. (R. S. 1933 Supp. 40-1012.) When so made they are an integral part of the contract and hence as binding as the policy itself. (R. S. 1933 Supp. 40-1017; *Kennedy v. Farmers Alliance Ins. Co.*, supra; *Jackson v. Republic Mutual Fire Ins. Co.*, supra; and *Haney v. Farmers Alliance Ins. Co.*, 134 Kan. 5, 4 P. 2d 460.)

It has been expressly held the procuring of additional insurance without compliance with the provisions of the bylaws renders the policy void. (*Haney v. Farmers Alliance Ins. Co.*, supra; *Jackson v. Republic Mutual Fire Ins. Co.*, supra; and *Lervold v. Republic Mutual Fire Ins. Co.*, 142 Kan. 43, 45 P. 2d 839.)

Additional insurance was procured by plaintiff without such compliance. Additional insurance was not secured by agreement endorsed on the policy or added thereto by the secretary. The pertinent portion of the bylaws, article XVIII, reads:

"This entire policy *unless otherwise provided by agreement endorsed thereon or added thereto by the secretary, shall be void if the insured now has or shall hereinafter make or procure any other contract of insurance* whether valid or not, on property covered in whole or in part by this policy."

Plaintiff had agreed in his application to be bound by the above bylaw. That part of the application provides:

"I also agree to be bound by the conditions and requirements set forth in the policy and bylaws of this.company, and I hereby authorize the secretary of this company to sign my name or cause same to be signed to the policy and bylaws and I hereby bind myself by said bylaws so signed as ·fully as if personally signed by me."

Plaintiff further agreed to article XII of the bylaws; the pertinent portion reads:

"The application, bylaws and policy constitute the entire contract between the company and the insured and no officer, agent or representative of the company is authorized, empowered or permitted to make any verbal agreement in reference to any matter pertaining thereto."

The application was thus part of the contract. The pertinent part of the application expressly provides:

"... it is expressly understood and agreed that the company will not be bound by any act or statement made to or by the agent restricting its rights or waiving its written or printed contract."

Article X of the bylaws, to which plaintiff agreed, reads:

"This company may appoint soliciting agents but no such agents shall have authority to bind the company by *any* contract."

Plaintiff says he did not read the application and relied on the agent to see that the policy permitted additional insurance. He said he had not seen the bylaws nor the policy. That was not the fault of the defendant. His wife directed it be sent to the mortgagee. Plaintiff contends the policy should be reformed by reason of accident, mistake or fraud and construed as though an endorsement for additional insurance were actually written into it. There are a number of reasons which prevent the suggested result. The statement of a few of them, however, will suffice. The application was a part of the contract, as were the bylaws. He cannot be heard to say he did not know what the contract was. (*Kennedy v. Farmers Alliance Ins. Co.,* supra.) There is no attempt by plaintiff to show how much additional insurance the agent agreed plaintiff could procure. Again, the agent was powerless to agree the policy would provide for permission to procure any additional insurance. No contract with the company for additional insurance having been made, there was no accident, mistake or fraud on the part of the company. Hence there was no occasion for reformation.

Plaintiff further contends defendant is liable because the agent did not properly fill out the application so as to provide for the right to buy additional insurance as it was understood he would do, and therefore the policy should be reformed. The result is the same. Plaintiff again overlooks the fundamental distinction between commercial and mutual insurance companies. In the Kennedy case it was said:

"It is the duty of an agent soliciting insurance to prepare the application so it will accurately and truthfully state the result of the negotiations, and it has been held, in *Pfiester v. Insurance Co.,* 85 Kan. 97, 116 Pac. 245, and allied cases, that the agent's failure to do so is in legal effect the fault of the insurance company. But that was said with reference to stock companies. A different rule applies to mutual companies organized under R. S. 40-421 *et seq.* See *Akers v. Farmers Alliance Ins. Co.,* 118 Kan. 241, 234 Pac. 956, and cases there collected." (p. 770.)

In the Jackson case it was said:

"It is first contended that the provision of the bylaw quoted above was waived because plaintiff gave notice to Cory of his intention to procure addi-

tional insurance, that Cory was not only defendant's soliciting agent, but also its treasurer and a member of its board of directors and a member of its executive committee. Plaintiff argues that Cory was related to defendant in so many capacities that notice to him should be construed as notice to it. Even so, notice of an intention to procure additional insurance would not strike down the provision of the bylaws that the policies sued on would be void if additional insurance were procured without agreement endorsed by defendant's secretary on the policies sued on. Nothing in the bylaws of the defendant authorized Cory, who solicited the insurance, to waive or abrogate that bylaw." (p. 573.)

Plaintiff next contends the policy provided for additional insurance. He refers to the following provision in the policy:

"This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, by solvent or insolvent insurers, covering such property."

Plaintiff also refers to another provision in the policy:

"This company shall not be liable . . . for any greater portion of the value of plate glass, frescoes, and decorations than that which this policy shall bear to the whole insurance on the building described."

He claims that while the last above provision does not apply to the property covered by this policy, it does show the policy contemplated other insurance.

Plaintiff further directs our attention to a provision in the "Mortgage Clause," endorsed on the policy:

"It is further agreed that in case of any other insurance upon the property hereby insured, then this company shall not be liable under this policy for a greater portion of any loss sustained than the sum hereby insured bears to the whole amount of insurance on said property issued to or held by any party or parties having an insurable interest therein."

Provisions similar to the above are contained in most, if not all modern standard fire policies. They cannot be construed as authorizing additional insurance, without compliance with the bylaws. True, they contemplate the possibility of additional insurance, but they do not permit it. They simply provide the extent of defendant's liability on its policy in the event additional insurance is permitted. The bylaws provide the manner in which additional insurance, if permitted, must be evidenced. The bylaw provisions would be utterly futile were plaintiff's contention sound. Plaintiff agreed unless permission to procure additional insurance was evidenced as the bylaws provide, his policy was void. Having failed to secure

the necessary permission, he cannot now recover contrary to his express agreement and simply on the ground the policy contemplated other insurance might be permitted.

Plaintiff finally insists defendant waived whatever right of forfeiture it had, if any, by the conduct of its investigator and adjuster, both before and after he had knowledge of additional insurance. The conduct on which plaintiff relies relates to statements and acts of the adjuster in an alleged attempt to negotiate a settlement of the loss. Plaintiff insists there is no statute which exempts mutual companies from the operation of the doctrine of waiver or estoppel. Our attention is also directed to a statement from 8 Couch, Cyclopedia of Insurance Law (§ 2150), as follows:

"The principles or doctrines of waiver and estoppel also apply in case of fraternal or lodge insurance, and also to mutual insurance companies doing business on the assessment plan." (p. 6939.)

Two cases are cited in the footnote in support of the above statement, *Trotter v. Grand Lodge*, 132 Iowa 513, 109 N. W. 1099, 7 L. R. A., n. s., 569; *McCarty v. Insurance Co.*, 81 S. C. 152, 62 S. E. 1, 18 L. R. A., n. s., 729. The Trotter case was decided upon the basis of a long course of business dealings. In the McCarty case it was said:

"The decisions in this state show that mutual insurance companies and fraternal benefit societies are governed by the same rules of law as the old-line insurance companies." (p. 155.)

As previously shown, the contrary is the rule in this state. Neither the above statement nor the cases cited are helpful to plaintiff in the face of his agreement. They cannot change his contract. He agreed that if he took out additional insurance without complying with the bylaws, his policy was forfeited. He did procure such insurance, and when he did so his policy was dead, and no agent could revive it. His agreement provided no *soliciting agent* could bind the company by *any* contract. (Art. X of bylaws, *supra*.) He further agreed *no* officer, agent or representative of the company was authorized, empowered or permitted to make any verbal agreement in reference *to any matter* pertaining to the contract. (Art. XII of bylaws, *supra*.) He further expressly agreed the company would not be bound by *any act or statement* made to or by the agent restricting its rights or *waiving* its written or printed contract. (Application for policy, *supra*.) It is therefore clear plaintiff had agreed no agent had power or authority to waive the forfeiture.

Our attention is also directed to *Assurance Co. v. Bradford*, 60 Kan. 82, 55 Pac. 335; *Clymer v. Westchester Fire Ins. Co.*, 130 Kan. 774, 288 Pac. 536; *Sedlachek v. Home Ins. Co.*, 141 Kan. 626, 42 P. 2d 557. None of these cases deal with waivers by agents of mutual companies and they are not controlling or persuasive in the instant case.

The author of this opinion is constrained to remark that his consent to the conclusion reached is purely the result of legislative compulsion. So long, however, as the laws on the subject remain unchanged, this court is bound by the legislative mandate. The judgment is reversed and the cause remanded with instructions to enter judgment for defendant.

HARVEY, J., dissenting.