No. 38,584

G. H. Osborn, *Appellee*, v. The Wheat Growers Mutual Hail Insurance Company, *Appellant*.

(242 P. 2d 1084)

Opinion filed April 12, 1952.

*C. C. Linley,* of Cimarron, argued the cause, and *Merton Elliott,* of Sublette, was with him on the briefs for the appellant.

*Geo. R. Gould,* of Dodge City, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

Wertz, J.: This is an action on a policy of insurance issued by a mutual hail insurance company organized under G. S. 1949, 40-1501, *et seq.* From the trial court's action in overruling defendant insurance company's demurrer to plaintiff's second cause of action, defendant appeals. Appellee will hereinafter be referred to as plaintiff and appellant as defendant or insurance company.

Plaintiff's petition sets forth two causes of action against defendant. The first cause of action alleges his residence, that the defendant is a mutual hail insurance corporation organized and existing by virtue of the laws of the state of Kansas for the purpose of insuring crops against loss by hail; that on June 29, 1950, for valuable consideration, defendant made, executed and delivered a policy of insurance, a copy of which was attached to the petition, thereby insuring plaintiff against loss or damage traceable directly to hail to the extent of $1,200 upon his growing crop consisting of eighty acres of pinto beans, describing the property whereon situated;

that plaintiff was the sole owner of the beans insured; that on August 28, 1950, while the policy was in force, the crop of pinto beans was completely destroyed by hail; that plaintiff fulfilled all conditions of the policy; that on September 4, 1950, defendant through its agent and adjuster Mr. Jacka, inspected the damaged crop of beans and estimated the amount of damage and loss thereto directly traceable to hail; that plaintiff demanded the full amount of insurance coverage; that plaintiff and defendant's agent were unable to agree as to the amount of damage to the beans; plaintiff demanded 100 percent loss and the agent of the company offered a much smaller amount in settlement of the damage; that plaintiff had received nothing from the loss and defendant refused to pay said damage; plaintiff asked to recover $1,200, the face of the policy, as damage. No demurrer was lodged against this cause of action.

Plaintiff's second cause of action repleads the allegations of the first cause of action and further states that at the time of the attempted adjustment September 4, 1950, when plaintiff orally demanded 100 percent loss under the insurance policy and the agent refused to pay that amount, defendant by and through its agent employed plaintiff orally to harvest the beans and agreed that if plaintiff would harvest said beans the defendant insurance company would make up any loss plaintiff might incur by reason of harvesting the beans; defendant's agent stated that he did not know how to adjust the loss and by reason thereof the above agreement was made; that plaintiff in accordance with the alleged agreement harvested the beans but that the beans after harvest could not be disposed of by reason of being so damaged by hail; that plaintiff expended the sum of $540 in harvesting the beans; that he demanded payment of same from the insurance company as harvesting expenses incurred by him in performance of his oral contract made with the company through its agent Jacka. Defendant refused to pay said sum, and the second cause of action closed with a prayer for the $540 cost to plaintiff in harvesting the beans.

Defendant demurred to plaintiff's second cause of action, which demurrer was by the court overruled, and it is from this order that defendant appeals to this court.

Plaintiff incorporated the policy of insurance in his petition. This policy makes plaintiff's written application for hail insurance and the bylaws of the defendant insurance company a part of the policy of insurance.

Plaintiff's written application for hail insurance to the defendant company discloses that he made application for membership in defendant's company and for indemnity against loss or damage to his growing crop by hail for the season 1950 covering the eighty acres of pinto beans described in his petition; that insurance coverage was not to exceed $15 per acre nor a total amount on the eighty acres of beans to exceed $1,200; and that he submitted therewith $132 as premium. The application provided among other things:

"I understand that this is a mutual company and I agree to be governed by the articles of incorporation and by-laws of said company, which together with this application and the policy issued thereon, shall constitute the contract between the said company and myself. . . . I further agree that the company shall not be bound by any representation or statement made by its agent or representative which is not contained in said by-laws."

Pertinent parts of the bylaws of the defendant company contain the following provisions:

Sec. 2: "The object of this Company shall be to insure its members against loss or damage to their growing crops by hail only.

Sec. 3: "Any person wishing to become a member of this Company may do so by making application for insurance against loss or damage by hail to his growing crops on blanks furnished by the Company, and paying the full amount of the premium in cash or note, and agreeing to be governed by the By-Laws, Rules, and Regulations of the Company.

Sec. 8. "The Board of Directors shall have authority to enact By-Laws, Rules, and Regulations, and perform all other acts for the efficient management and working of the Company.

Sec. 20. ". . . This Company's liability is limited to loss or damage directly traceable to hail only. This Company shall not be liable for loss or damage to any crop herein described, nor any part thereof, by causes other than hail; nor by causes combined with hail. . . ."

Plaintiff contends that Mr. Jacka was defendant's adjuster and agent and therefore had implied authority to bind defendant company on a contract to pay plaintiff for harvesting the beans in order to determine the amount of plaintiff's loss due to hail. Nothing in the bylaws of the defendant company authorized Jacka, the adjuster or agent, in adjusting plaintiff's hail loss, to waive or abrogate the bylaws. It may be noted here that plaintiff's contract was not with a commercial insurance company but with a mutual company, and a different rule is applicable to mutual insurance companies organized under G. S. 1949, 40-1501, *et seq.*, such as we have in the instant case. An analysis of the fundamental distinctions and the principles underlying the distinctions between commercial insurance companies and mutual insurance companies may be found

in *Akers v. Farmers Alliance Ins. Co.,* 118 Kan. 241, 234 Pac. 956; *Kennedy v. Farmers Alliance Ins. Co.,* 127 Kan. 768, 275 Pac. 214; *Jackson v. Republic Mutual Fire Ins. Co.,* 138 Kan. 571, 27 P. 2d 296; and *Lohr v. Farmers Alliance Ins. Co.,* 144 Kan. 776, 62 P. 2d 837.

At the outset it may be stated that a mutual insurance company is a favorite of the statutory law. In speaking of mutual companies organized under our statutes, such as the company in the instant case, this court said in *Kennedy v. Farmer's Alliance Ins. Co.,* supra:

"These companies are organized by property owners who desire mutually to insure the property of their members. Before a person can have his property insured by such a company he must become a member of it and join with other members in their mutual obligations. In a sense he is both the insurer and the insured. The premiums paid by members constitute the fund from which losses and expenses are paid; the members share in the profits in proportion to their interest, and control and regulate the affairs of the company (32 C. J. 1018). The mutuality of obligation, of insurance, and of all the advantages, is the main and essential feature of such a company. (32 C. J. 1019.)"

In the instant case, no policy of hail insurance was issued except on written application and the persons insured formed the membership of the company (G. S. 1949, 40-1503); the statutes also provide that members of mutual companies elect their officers (40-1511); that the board of directors shall manage and control corporate affairs, and adopt necessary bylaws which shall be submitted to the commissioner of insurance for approval (40-1510); the company may issue policies to its members on growing crops against loss or damage by hail and every policy shall contain a printed copy of the application and a copy of the bylaws which shall become a part of the contract between the company and the assured and all policies of the company shall be signed by the president and secretary (40-1512); and that all losses shall be adjusted by the company promptly upon receipt of the notice thereof in compliance with the provisions of such policy, and all adjusted losses shall be paid prior to November first of each year (40-1504).

The bylaws become a part of the contract of insurance and are binding on the members insured. The members are conclusively presumed to have knowledge of the bylaws and are estopped from questioning a bylaw which to their knowledge has been generally acted on in transacting the business of the company during the time

they have been members. (44 C. J. S. 653, § 107b; *Kennedy v. Insurance Co.,* 96 Kan. 598, 152 Pac. 639.)

Plaintiff argues that Jacka, being an adjuster or agent of the company, had authority to make a contract with the plaintiff on behalf of the company to harvest the beans and pay plaintiff for such harvesting. Assuming such agreement was made by the plaintiff and Jacka, there is nothing in the entire contract between the parties which consists of the policy, the application and the bylaws, which would authorize Jacka to make such a contract or to waive or abrogate the bylaws. It is elementary law that an agent, a director of a corporation, or an officer, has no authority to obligate the corporation by the mere fact that he is such agent, director or officer. The corporate authority is exercised by the board of directors (40-1510), not by individuals comprising its personnel. (*Jackson v. Republic Mutual Fire Ins. Co.,* supra.)

In conclusion it may be stated that plaintiff's second cause of action discloses on its face that plaintiff made application to become a member of the defendant company; that as such member he agreed to be bound by the terms of the policy, application, and bylaws, which limited the liability of the company in an amount not exceeding $15 per acre or a total of $1,200 on the entire eighty acres of beans; that he had knowledge of such bylaws and that the company would not be bound by any representation or statement made by its agent or representative not authorized by the bylaws; that the policy covered solely any loss occasioned to the crop by hail and made no provision for authorizing an agent of the company to make a separate and distinct contract for harvesting the crop.

To allow recovery on plaintiff's second cause of action would amount to an extension of the limit of liability under the policy and a change by court action in the contract entered into between the parties, and would allow plaintiff as a member of a mutual hail insurance company to secure special privileges and advantages over his co-members in direct violation of the bylaws formed by such company to control the liability of its members. We are of the opinion that the demurrer to plaintiff's second cause of action should have been sustained.

The judgment of the lower court is reversed and the case remanded with directions to sustain defendant's demurrer to the second cause of action set forth in plaintiff's petition.