No. 27,779.

W. J. Smith, *Appellee*, v. (The Miami Farmers Mutual Fire Insurance Company et al., *Defendants*) The Alliance Coöperative Insurance Company, *Appellant*.

(262 Pac. 552.)

SYLLABUS BY THE COURT.

1. Fire Insurance—*Application for Renewal Policy—Necessity of Following By-laws of Mutual Company as to Written Application.* A member of a mutual fire insurance company held a policy which expired November 5, 1925. The policy had been left with the company for safe-keeping, and before it expired the member told the secretary of the company he did not know when the policy expired, and told the secretary to look after it, and when it expired to renew it. The secretary said he would do so. Nothing further was done by the member or the secretary with respect to insurance effective after November 5, 1925, and on January 1, 1926, the property covered by the policy was destroyed by fire. The by-laws of the company provided applications for insurance should be in writing, signed by the applicants, and the company should in no event be liable until the application was approved and signed by the secretary. The statute relating to mutual fire insurance provided every policy issued should have attached to it a

Fire Insurance, 26 C. J. pp. 81 n. 14, 109 n. 17, 110 n. 30. Insurance, 32 C. J. p. 1034 n. 91 new. Mutual Benefit Insurance, 29 Cyc. p. 69 n. 35.

Smith v. Miami Farmers Mutual Fire Ins. Co.

copy of the application. *Held,* the holder of the expired policy has no cause of action against the company based on the secretary's failure to renew the insurance.

2. SAME—*Renewal Policies—Effect of Acts of Secretary of Mutual Company Contravening Statute and By-laws.* The secretary and assistant secretary of the company frequently issued renewal policies on oral request without taking written applications, and collected for them afterward. *Held,* the practice contravened the statute and the company's by-laws, and policies so issued were nugatory until the law and the by-laws were complied with.

3. INSURANCE—*Consolidation or Merger—Rights and Liabilities.* On January 22, 1926, a reinsuring company assumed the liabilities of the company which issued the expired policy. *Held,* the holder of the expired policy has no cause of action against the renewing company.

Appeal from Miami district court; GARFIELD A. ROBERDS, judge. Opinion filed January 7, 1928. Reversed.

*Stephen H. Allen, Otis S. Allen* and *George S. Allen,* all of Topeka, for the appellant.

*Alpheus Lane* and *Karl V. Shawver,* both of Paola, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover from the Miami Farmers Mutual Fire Insurance Company and the Alliance Coöperative Insurance Company, a fire insurance company, for loss occasioned by fire. Judgment was rendered against both companies, and the Coöperative company appeals.

Smith held a policy issued by the Mutual company which expired November 5, 1925. He had left the policy with the company for safe-keeping. Before the policy expired Smith's agent saw the secretary of the company, told the secretary he did not know when the policy expired, and told the secretary to look after it, and when it did expire to renew it. The secretary said he would do so. On January 1, 1926, the property covered by the policy was destroyed by fire. No written application for a new policy had been made or signed, no cash premium had been paid, no premium note had been given, no new policy in any form had been issued, and there was nothing on the records of the company indicating the property was insured when the fire occurred. On January 22, 1926, the Coöperative company entered into a contract with the Mutual company, whereby the Coöperative company agreed to reinsure all the business of the Mutual company shown on its records to be in force on the date the contract was executed. In the signed instrument as-

sets of the Mutual company were scheduled, estimated liabilities were stated to be $313.11, the net balance between assets and liabilities was stated, and the amount at risk was stated, all of which it was agreed were to be paid or turned over to the Coöperative company. The Coöperative company further agreed to take over the business of the Mutual company as described, add it to its own business, and care for it as if it had been originally written in the Coöperative company.

The action against the Mutual company was for violation of the secretary's agreement to renew the old policy, and the action against the Coöperative company was on an alleged agreement to assume the liabilities of the Mutual company. The amount of the loss was $900, and was not contested. Oral evidence was introduced, over objection, relating to the negotiation of the contract between the two companies. The evidence was that the liabilities of the Mutual company were to be assumed by the Coöperative company, but the evidence relating to recognition of the Smith claim as a liability was conflicting beyond reconciliation. The secretary testified that, at a meeting of the board of directors of the company held January 22, it was unanimously voted to pay the Smith claim. Nobody else recalled such a vote, and the secretary was unable to produce the minutes of the meeting, although he claimed he had made a search for them. According to the testimony of the president of the company, the treasurer of the company, and a number of the directors, the subject was still under discussion and undetermined at the directors' meeting held January 22. The contract containing the estimated liability of $313.11 was signed while that meeting was in progress. The secretary signed the contract for his company, and he said he knew what the instrument contained.

The secretary testified it was the custom of the company to issue renewals and collect for them later, and very often that was done without a written application having been made. The assistant secretary testified it was the custom, when a person desired to renew a policy, to go ahead and make the renewal; and the assistant secretary said in such cases he wrote up the policies.

Both companies were organized and were operating under the statute relating to mutual fire insurance companies. One provision of the statute reads as follows:

"Every policy issued shall have attached thereto a printed copy of the note and application, also a printed copy of the by-laws and regulations of the

company, which shall be signed by the president and secretary of the company and the insured, and shall become a part of the contract between the insurer and the insured." (R. S. 40-441.)

No power to dispense with any of these requirements, whether by custom, by-law, or otherwise, existed.

The by-laws of the Mutual company contained the following provision:

"Sec. 11. The application for insurance must be in writing, upon forms furnished by the company, and signed by the applicant.          .          .          .

"The company in no event shall be liable until the application is approved and signed by the secretary. If the application be rejected, the premium and premium note shall be immediately returned to the applicant."

When Smith requested his policy be renewed he was a member of the company, and was charged with knowledge of the by-laws. When his policy expired his membership in the company expired. He could not again be insured unless he signed an application and incurred the obligations of a member to pay assessments and abide by the by-laws. Renewal policies issued by the secretary and assistant secretary on oral request were issued contrary to the by-laws, contrary to the statute, and were nugatory until completed as the by-laws and the statute required. If the secretary had performed his oral promise to Smith to issue a renewal policy according to the custom, the performance would have created no liability on the part of the company for the loss which occurred, and of necessity, breach of the promise could not create an equivalent liability.

The assistant secretary testified he did not sign applications for persons desiring to renew policies unless he was authorized by the applicants to do so. Assuming Smith's request that his policy be renewed at expiration was intended to confer on the secretary authority to sign an application for Smith, and assuming an application so signed would have been effective, the secretary was Smith's agent to attach the signature, not the company's agent. The agent's failure to act for his principal might make the agent liable to the principal, but the company could not be liable to Smith for the secretary's inaction.

To sustain the judgment Smith cites the decision in the case of *Insurance Co. v. Corbett*, 69 Kan. 564, 77 Pac. 108, to the effect that, in the absence of a controlling by-law or agreement, a binding contract of insurance with a mutual company may be consummated with-

out issuance of a policy. In that case there was a written application duly signed by the applicant. The application contained a clerical error in computation, and the applicant paid premium on the basis of the erroneous computation. The company did not reject the application, but retained it, kept the applicant's money, and forwarded to the applicant for signature a corrected application and premium note. Before the error in computation was corrected and a policy was issued, loss occurred. In the opinion the court said:

"The conduct of the parties, including the retention of the plaintiff's money by the company, together with the application, was sufficient to establish a contract, in the absence of a controlling provision of the by-laws or an agreement to the contrary. [Citation.] No such condition or agreement appears in the record, and the plaintiff was entitled to recover without any policy having been issued." (p. 570.)

In this instance, the initial step in the creation of liability on the part of the company, a written application signed by the applicant and approved and signed by the secretary, was regulated by a controlling provision of the by-laws which appears in the record.

Other cases cited in Smith's brief are equally inapposite. In the case of *Insurance Co. v. Stone*, 61 Kan. 48, 58 Pac. 986, formation of the insurance contract was not regulated by statute and by-law. The company was a stock company, an application was duly made and forwarded, and was not disapproved, and the premium was paid by the applicant and kept by the company. In the cases of *Brown v. Insurance Co.*, 82 Kan. 442, 108 Pac. 824, and *Wilson v. Insurance Co.*, 90 Kan. 355, 133 Pac. 715, the agreements for insurance were made with agents of stock companies having authority to contract and to issue policies, free from restriction imposed by statute or by-law. No decision of this court has extended the law relating to liability of mutual fire insurance companies beyond the limits reached in the Corbett case.

In order to be of greatest service, small mutual companies must be free to conduct their business with as little formality as possible. Certain fundamental standards of prudence established by universal experience must be observed, however, or the ends to be accomplished are certain to be defeated. The statutory regulations are as simple as they can be made, consistent with safety. A practice of making mutual relations and obligations of association and member,.

and conduct of the association's financial affairs for the protection and benefit of all the members, depend entirely on a street conversation, is not consistent with safety. The policy of the statute is definitely against purely oral contracts of insurance. The plaintiff's cause of action is not based on so substantial a thing as an oral contract of insurance. It rests on an oral contract to effect insurance in the future. The contract was not negotiated by the company or by anyone having power to bind it, and the Smith loss did not constitute a liability of the Mutual company.

Conceding, but not deciding, that the Coöperative company could, under the law, assume accrued liabilities of the Mutual company and did so, the Smith loss was not assumed, because it was not a liability. The vote taken by the board of directors at the meeting testified to by the secretary was on the question whether the company should "pay the loss or reject it." Whether the company was liable was a question which was not affected by a vote either to pay or to reject. Whether the estimate of liabilities stated in the contract was correct or incorrect, the contract was in writing. It fixed the obligation of the Coöperative company, and it cannot be construed to cover anything not a liability of the Mutual company.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment in favor of the Coöperative company.