No. 28,509.

GEORGE KENNEDY, *Appellee*, v. THE FARMERS ALLIANCE INSURANCE
COMPANY, *Appellant;* and MORRIS WILKERSON, *Defendant.*

(275 Pac. 214.)

Opinion filed March 9, 1929.

*Stephen H. Allen, Otis S. Allen* and *George S. Allen,* all of Topeka, for the
appellant.

*J. W. Farrell,* of Weir, *P. Louis Zickgraf, C. S. Denison* and *E. V. Bruce,* all
of Pittsburg, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action on a policy of insurance issued by
a mutual fire insurance company organized under R. S. 40-421
*et seq.* There was a trial to the jury, judgment was for plaintiff,
and defendant has appealed.

There is not much controversy about the facts. Plaintiff lived at
Weir, Kan., and was conducting a bakery. C. U. Judd was the
soliciting agent at Weir for the defendant company, and solicited
plaintiff for insurance on his household goods and went to see the
goods, and took plaintiff's written application for a membership
and a policy of insurance in the defendant company. This applica-
tion contained, among other things, the following:

"1. Are you sole owner of the property to be insured? Yes.

"6. Is the personal property encumbered? No.

"21. By whom is building occupied?  George Kennedy.

"22. For what purpose?  Dwelling.

"23. Have you ever suffered loss by fire?  Yes.

"24. If so, give particulars.  Gasoline exp. 1904; no ins.

"Loss payable to George Kennedy.

"I warrant the foregoing application to contain a full and true description and statement of the condition, situation, occupation and title of the property to be insured and I warrant the answers to each of the foregoing questions to be true. I further agree to be bound by the conditions and requirements set forth in the policy and by-laws of the Farmers Alliance Insurance Company of Kansas, and it is especially understood and agreed that the said company will not be bound by any act or statement made to or by the agent, restricting its rights or waiving its written or printed contract, unless inserted in this application."

These statements were false in that plaintiff was not the sole owner of the property to be insured; part of it was encumbered, and he had suffered two losses by fire, for one of which he had collected insurance. Plaintiff had recently moved to Weir, and had bought $950 worth of furniture from a Mr. Wilkerson, on which he had made an initial payment of $25 and two monthly payments of $10 each; the balance of the purchase price was secured by a mortgage on the furniture. Two smaller lots of furniture, one amounting to $178, the other to $100, had been bought on payments, the vendors retaining title, on which small payments had been made. The application should have stated the true condition as to encumbrances on the property, and requested the loss to be paid to the mortgagees, as their interest should appear, and it should have disclosed the two fire losses previously suffered and the fact that insurance was collected on one of them. The fact that the application contained the false statements above mentioned is not altogether the fault of plaintiff. At the time of the making of the application he told Judd how he had purchased the property, substantially what he owed on it, and how the same was secured, and that one of the reasons he was taking insurance was to protect his creditors, naming them, and told the facts about his two previous fire losses. Both plaintiff and Judd so testified. Judd placed his "own interpretation on what plaintiff told him" concerning these matters and filled out the application in the form it was signed. What prompted Judd to fill out the application with these false statements and thus deceive the president and secretary of the company he represented, and jeopardize the rights of the

applicant, is not disclosed. His conduct in this respect deserves severe censure. But plaintiff signed it without reading it, or observing the false statements therein. Perhaps "when Gabriel blows his horn" there will be persons so indifferent to their property rights and liabilities as to be signing instruments relating thereto without reading them or knowing their contents, and courts will be importuned to relieve them of the consequences of their acts. It is the duty of an agent soliciting insurance to prepare the application so it will accurately and truthfully state the result of the negotiations, and it has been held, in *Pfiester v. Insurance Co.*, 85 Kan. 97, 116 Pac. 245, and allied cases, that the agent's failure to do so is in legal effect the fault of the insurance company. But that was said with reference to stock companies. A different rule applies to mutual companies organized under R. S. 40-421 *et seq.* See *Akers v. Farmers Alliance Ins. Co.*, 118 Kan. 241, 234 Pac. 956, and cases there collected. These companies are organized by property owners who desire mutually to insure the property of their members. Before a person can have his property insured by such a company he must become a member of it and join with other members in their mutual obligations. In a sense he is both the insurer and the insured. The premiums paid by members constitute the fund from which losses and expenses are paid; the members share in the profits in proportion to their interest, and control and regulate the affairs of the company. (32 C. J. 1018.) The mutuality of obligation, of insurance, and of all the advantages, is the main and essential feature of such a company. (32 C. J. 1019.) No policy of insurance is issued except on written application. (R. S. 40-425.) The persons insured form the membership of the company. (*Brenn v. Insurance Co.*, 103 Kan. 517, 520, 175 Pac. 383.) The members elect their officers. (R. S. 40-427 to 40-429.) By-laws are authorized. (R. S. 40-436.) Each policy must have attached to it or printed thereon a copy of the by-laws, and these must be signed by the president and secretary of the company, and by the insured member. (R. S. 40-441.) These by-laws become a part of the contract of insurance, and are binding on the member insured. (*Kennedy v. Insurance Co.*, 96 Kan. 598, 152 Pac. 639.) He cannot be heard to say that he does not know what the by-laws are, or that they are not binding on him. (32 C. J. 1022.) Policies of insurance can be issued only on written application, which even the secretary of the company would have no au-

thority to waive.  (*Smith v. Miami Farmers Mutual Fire Ins. Co.,*
125 Kan. 10, 13, 262 Pac. 552.)   The by-laws of the defendant com-
pany in this case contained, among others, the following provisions:

"This entire policy unless otherwise provided by agreement indorsed thereon
or added thereto by the secretary, shall be void  . . .   if the interest of the
insured be other than unconditional and sole ownership, . . .  or if the
subject of insurance be personal property and be or become encumbered by a
chattel mortgage."

By this provision the officers of the company had authority, "by
agreement indorsed" on the policy or "added thereto by the secre-
tary," to issue a policy of insurance on property in which the interest
of the insured was other than unconditional and sole ownership, or
if the subject of insurance was personal property encumbered by a
mortgage.  It is not even contended by plaintiff in this case that any
such agreement was indorsed on the policy or added thereto by the
secretary; hence, under the facts, the policy is void.  Indeed, it is not
seriously contended that the secretary even knew that the property
was encumbered, or that plaintiff's title thereto was other than un-
conditional and sole ownership.  So far as the record here discloses,
the only information the secretary had concerning the matter was
the written application signed by plaintiff which was forwarded to
him.  Without setting out the correspondence the record indicates
that the secretary wrote the soliciting agent questioning the amount
of the insurance on the household goods, and that the soliciting agent
answered with assurances that the goods were of such value that they
justified a policy in the amount of $2,000, as applied for.  In this
respect it may be noted that the estimate of the soliciting agent ex-
ceeded the value placed on the goods by the plaintiff, who, in his
testimony, placed the value at $1,800.  But there is no contention
that this correspondence disclosed to the secretary the true condition
of plaintiff's title to the property and the encumbrances thereon.  In
this respect the case differs from *Boberg v. Fitchburg Mutual Fire
Ins. Co.,* post, p. 787.  There, there was evidence tending to show that
the secretary or general agent of the company was advised by the
soliciting agent of certain temporary concessions made to the in-
sured, and the policy was issued with knowledge of those matters.

It is true in this case plaintiff testified he did not read the policy
after it was delivered to him, and did not know what the by-laws
of the company were.  In view of the nature of the defendant com-
pany and plaintiff's relation to it he cannot, under the authorities

above cited, be heard to make this contention. It was his business to know what they were, and he is bound by their provision. The result is there should have been no recovery on the policy in this case. Defendant's demurrer to the evidence should have been sustained.

The judgment of the court below is reversed with directions to enter judgment for the defendant.