No. 30,801.

KATRINA SVETLICIC, and KATRINA SVETLICIC, as Guardian of the Person and Estate of VINCENT SVETLICIC, FLOYD SVETLICIC, JOSEPH SVETLICIC, RICHARD SVETLICIC, THOMAS SVETLICIC, THEODORE SVETLICIC, MARY SOPTIC and KATIE VIDOVICH, *Appellees*, v. THE FARMERS ALLIANCE INSURANCE COMPANY, *Appellant*.

(16 P. 2d 956.)

Opinion filed December 10, 1932.

*Otis S. Allen* and *George S. Allen*, both of Topeka, for the appellant.
*David F. Carson* and *H. J. Emerson*, both of Kansas City, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is taken by a mutual fire

insurance company which was defendant in an action by a widow, who was also guardian of the minor children of the former owner of the property insured by him in his lifetime in the defendant company. The fire, occurring a few months after his death, resulted in a total loss of the dwelling house and the household goods.

The appellant urges two reasons in particular why the plaintiff should not recover and why the policy is void: that additional insurance was subsequently taken on the same property without permission being indorsed on the policy, and that two mortgages covered the property insured at the time application was made for the policy and only one was noted in the application.

A preliminary question is raised as to who actually signed the name of the owner of the property to the application. He is now deceased and was in the hospital at the time of one of the two visits of the agent soliciting the insurance. Neither the deceased nor his wife could read or write, and they both managed to speak and understand a little English with much difficulty. The agent was frank enough to admit that he may have signed it himself at the request of the owner or his wife, but does not think the signature looks like his writing. Whether the owner signed the application himself or requested another to do so for him is not of vital concern in the case under all the circumstances. It was said in the case of *Haney v. Farmers Alliance Ins. Co.*, 134 Kan. 5, 4 P. 2d 460, "The by-laws were a part of the contract of insurance, whether or not the signature was made at the request or direction of the insured."

It must be observed and noted at the outset that the defendant is a mutual fire insurance company and is therefore governed by very different rules from those regulating stock companies, particularly in that the by-laws of a mutual company are binding upon the insured whether he actually knows of them or not, as has been held in *Kennedy v. Farmers Alliance Ins. Co.*, 127 Kan. 768, 275 Pac. 214, and many other cases. As was said in that case the applicant is in a sense both the insurer and the insured. This difference, it was said, was based upon the provisions of R. S. 40-421 *et seq.*, now R. S. 1931 Supp. 40-1001 *et seq.*, and particularly R. S. 40-441, now R. S. 1931 Supp. 40-1017, permitting the by-laws to be made and constitute a part of the contract of insurance. There is no question about the by-laws of this company distinctly providing that the policy shall be void if additional insurance is taken on the same

property without the written consent of the secretary of the company, or if the property be encumbered by mortgage not mentioned in the application. For this reason many of the strict rules of liability as announced by this court in cases cited by appellee with reference to stock companies will not apply here.

The strict rule stated in the Kennedy case, *supra,* and in other cases on this subject has been regularly followed, but notable exceptions have been observed in some of our recent cases, as in *Haney v. Farmers Alliance Ins. Co.,* supra, and *Kimmi v. Brown County Farmers Mut. Fire Ins. Co.,* 135 Kan. 555, 11 P. 2d 706. In the former the opinion stressed the breach of the provisions of the policy by the insured on account of the fact that she not only took out additional insurance on the same property but collected the additional insurance after the loss. In the latter case the additional insurance was taken out in the same company in violation of the strict rule just the same, but the company was not allowed to avail itself of such an unjust advantage as the strict rule would have permitted. In the same case there was a mistake in the description of the property covered by the insurance, the insured owning two separate properties, and the agent, being the agent of another insurance company having insured one of them, got the descriptions confused, and while the company claimed and urged nonliability under the strict rule for mutual insurance companies, the court recognized this misdescription as a mutual mistake and the liability of the company on the policy not to be affected thereby. In the case of *Farmers Mutual Ins. Co. v. Millard,* 129 Kan. 283, 282 Pac. 582, the strict rule of the mutual insurance company against change of ownership of the property insured was held not to apply to the division of the property of the deceased insured among his heirs by partition and that the policy should not be thereby annulled.

In the case at bar the widow, who could talk and understand English only a very little, and that with great difficulty, attempted to insure two sheds she had built on the premises after the death of her husband at a cost of about $300, and the agent, without her knowledge or consent, included the dwelling house and household goods in the policy and issued it for $1,900. Unlike the situation in the Haney case, *supra,* where the insurance money on the subsequent policy was collected, nothing was ever paid on this subsequent policy and plaintiff in her reply disclaims anything thereon, alleging it has been canceled.

Under these circumstances are we to say that the strict rule of the by-laws is to control and render the policy void? No subsequent policy was ever solicited or requested on the property covered by the policy here involved. Forfeitures are not favored generally, but when allowed by virtue of contracts the breach should be intentional or with some benefits or advantage in view. In line with the reasonable exceptions mentioned in the cases above cited we hold that it would be unreasonable to consider a policy requested to be put on the newly built sheds alone as a subsequent policy on the dwelling and household goods within the meaning of the by-laws of the defendant mutual insurance company, simply because it was so extended by the agent without the knowledge or consent of the owner.

The answers to questions 4, 5 and 6 show that a mortgage for $710 existed on the property in addition to the $1,300 mortgage mentioned in the application at the time the application was made and under the strict rule might render the policy void, but a question of waiver intervenes. The evidence shows that after the agent of the defendant company, who had most to do with the procuring of the application for the insurance and procuring proof of loss after the fire, had full knowledge of the existence of this second mortgage and of its having been fully paid before the fire. The secretary of the company wrote a letter to the attorney for the plaintiff placing the company's refusal to pay the policy entirely upon the forfeiture of the policy because plaintiff had taken out additional insurance upon the same property without the consent of the company, thus waiving the defense of any other forfeiture or the breach of any other condition of the policy. The letter is as follows:

"June 10, 1930.

"*Mr. David F. Carson, 302 Brotherhood Block, Kansas City, Kan.:*
    *Re:* Vinco Svetlicic.

"Dear Sir—This will acknowledge receipt of your letter of June 4 making inquiry with reference to a loss for the above-captioned assured.

"The writer investigated this loss and found that after the assured in this case had secured insurance from this company she had later secured a policy from another company for approximately the same amount without giving notice to this company or to its agent. Therefore the Farmers Alliance Insurance Company policy automatically became void according to its provisions.

"Investigation showed that the other policy permitted other insurance, and after discussing the matter with the assured and her daughter it was suggested that the writer present proof, which was done.

"So far as the Farmers Alliance Insurance Company is concerned there is no liability.

"We trust this answers your inquiry and if there is any other information desired, we shall be pleased to furnish it.

"Yours very truly,

"Farmers Alliance Ins. Co.

"ECM:ES.                                           "E. C. Mingenback, *Secretary*."

The rule as to such waiver is very explicit and will not permit the company to make a defense to the policy upon any other ground at that time known to the company than that stated in the letter.

"Where an insurer bases its refusal to pay a loss entirely upon a forfeiture caused by the failure of the insured to comply with a particular condition of the policy it cannot, when sued for the loss, maintain a defense founded upon another alleged forfeiture for violation of other conditions not referred to in such refusal and of which it had knowledge when the refusal was made." (*Insurance Co. v. Ferguson,* 78 Kan. 791, syl. ¶ 1, 98 Pac. 231.)

"In negotiations for settlement after loss occurred, the insurer denied liability and refused to pay on the sole ground the change in description had become effective with respect to a dwelling house not destroyed by fire. *Held,* the defense of failure to make timely proof of loss was waived." (*Kimmi v. Brown County Farmers Mut. Fire Ins. Co.,* 135 Kan. 555, syl. ¶ 3, 11 P. 2d 706. See, also, *Mayes v. Knights and Ladies of Security,* 92 Kan. 841, 142 Pac. 290; and *Lucas v. American Yeomen,* 105 Kan. 700, 185 Pac. 901.)

It is urged that the secretary of the company when he wrote the above letter did not know of the second mortgage and did not learn of it until the first day of the trial, but the evidence is very clear that the agent knew all about it long before the writing of the letter, and his knowledge of affairs connected with the business which he was conducting for the company is that of the company.

"Where an agent of an insurance company sends a solicitor to inspect a risk and take a written application for insurance, and upon the application issues a policy, the company is bound by knowledge of the solicitor of the fact that gasoline is being used on the premises, and will be presumed to have waived a condition in the policy forbidding such use." (*Cue· v. Insurance Co.,* 89 Kan. 90, syl., 130 Pac. 664.)

"Representations, apparently within the scope of his authority, made by an insurance agent, authorized to solicit insurance, take applications, collect and remit premiums, and to receive and deliver policies to an insured whom he solicits, and relied upon by the insured, are binding upon the insurance company." (*Nichols v. Casualty Co.,* 113 Kan. 484, syl., 214 Pac. 1111.)

Appellant insists there was error in the instructions given as well as in the refusal to give those requested, especially in the use of the expression in instructions given to the effect that if the plaintiff did not understand and did not know that the subsequent policy issued covered the same property it was not in violation of the pro-

visions of the by-laws of the company. This matter has been fully covered in the opinion regarding the facts in this case fully justifying the making of an exception to the strict rule. In this connection appellant cites the case of *Novosel v. American Ins. Union*, 129 Kan. 250, 282 Pac. 584, where it was held that the word "knowingly" had no place in the instructions. That, however, was concerning false warranties made in an application for life insurance respecting the amount of insurance the applicant held in other companies, a thing he could not help but know, and no good reason or excuse could be given for making a false or incorrect statement as to such amount.

We find no error in the giving or refusal to give instructions nor in refusing to grant a new trial.

The judgment is affirmed.