No. 33,025

EMILE NANNY, *Appellee*, v. THE ALLIANCE COÖPERATIVE INSURANCE
COMPANY, *Appellant*.

(66 P. 2d 405)

Opinion
filed April 10, 1937.

*Otis A. Allen, George S. Allen* and *Raymond Briman,* all of Topeka, for the
appellant.

*Robert S. Lemon, Lawrence M. Walker* and *C. S. Denison,* all of Pittsburg,
for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case was taken by the defendant, a mutual fire insurance company, from a judgment rendered against it on one of its policies, and from the order of the trial court in overruling its demurrer to the testimony of the plaintiff and in overruling its motion for a new trial.

The appellant bases its argument as to error upon two questions involved: first, that the policy issued was void because of the existence of a mortgage lien on the property, which was not mentioned in the application, and also taxes on the property due and unpaid; and second, because of a change in the title, interest, possession and occupancy of the property insured on the strength of a void quitclaim deed and an assignment of the policy, all without the consent of the defendant company.

Much of the evidence was introduced by stipulation. The application for the policy was made by Stanislao Viventi, who was admitted to have been the owner of the property at the time of making the application. The question in the application as to the property being encumbered was not answered, but the stipulation contains the information that the property was encumbered at the

time of making the application with a mortgage for $500 which was released of record about five months later.

The insurance policy was issued March 15, 1930, for $600 on the house and $400 on the furniture therein. In August, 1930, the sheriff of Crawford county executed a sheriff's deed to Peter Wachter for the property under an order of sale for past-due taxes. The owner, Viventi, was a party to this action by Crawford county to foreclose its tax liens on a large number of lots, but he was served only by publication. The same month Wachter sold and conveyed by quit-claim deed this property to the plaintiff, Emile Nanny. Thereafter, the plaintiff Nanny purchased from Viventi the household furniture and received a bill of sale therefor, dated January 13, 1931, executed by Viventi in Illinois, he having removed from Kansas to Illinois. Later the district court of Crawford county set aside the confirmation of sale on the application of parties other than those interested in this action. In April, 1932, Viventi assigned to plaintiff Nanny the insurance policy, and the plaintiff accepted the assignment, agreeing to be bound and governed by the terms and conditions of the policy, and on the first day of June, 1932, the formal consent of the insurance company to the assignment bearing the name of the secretary of the company was returned by the company to its agent, and he gave it to the plaintiff about June 1, 1932. The premium on the policy was paid in advance for three years, covering the period from March 15, 1930, to March 15, 1933. The building and the household furniture were entirely destroyed by fire on October 10, 1932.

The bylaws of the company were made a part of the policy and the application made the bylaws a part of the insurance contract. Among the bylaws was the usual one that the policy shall be void if the insured had concealed or misrepresented any material fact concerning the insurance, and enumerated among such facts was the encumbrance of the property. The bylaws further provided that any change of ownership, except by death, shall be void unless assent thereto was endorsed on the policy by the secretary of the company.

If the first question involved, as stated by the appellant, was the only question here for consideration, and it was limited to the failure to show in the application, in answer to a specific question, the existence of a mortgage on the property, we would have no difficulty in concurring with the appellant in holding the policy invalid. But the second question involved includes, among other propositions, an

assignment of the policy and an alleged consent thereto by the company which may constitute a new agreement between the company and the assignee of the original policy. Neither will it be necessary in connection with this second question to consider the effect, if any, upon the validity of the original policy of the release of the existing mortgage shortly after the issuance of the policy and long before the fire.

On the second question the appellant contends that plaintiff acquired no rights whatever in the policy superior to the rights of Viventi, that plaintiff took the policy subject to all the terms and conditions thereof, and they made it void as to Viventi and it was therefore void in the possession of the plaintiff. Appellant claims that it was also void in the hands of the plaintiff for the reason that plaintiff did not own the property and that there was no consent endorsed thereon by the secretary to the change in ownership or possession, that the only title he had was by quitclaim deed from Peter Wachter, and he had no title to the property because of the decision of the court in Crawford county and final decision in this court in the case of *Crawford County Comm'rs v. Radley et al.*, 134 Kan. 704, 8 P. 2d 386, where the confirmation of the sheriff's sale on tax foreclosure was set aside, appellant claiming that Wachter's title and plaintiff's title were other than unconditional and sole ownership as required by the policy. Appellant also claims that title is defective because of unpaid taxes. These claims are not asserted as an attack on the title, but simply to show that because of the condition of the title the policy was void under the terms of the contract.

The most important feature involved in this second question is the matter of the consent of the company to the assignment of interest of Viventi to the plaintiff. The rules require that such assent can be given only by the secretary of the company, and it bears in writing the name of the secretary, E. J. Smalley, secretary, but the appellant alleged and proved by the testimony that he did not sign the paper nor authorize anyone to sign it. He said he thought it was signed by a certain employee of the company. The records of the company show it was assigned to Emile Nanny on June 1, 1932, the same date the consent on the policy bears. The evidence also shows that after the policy was sent by Viventi to Nanny, the former making the assignment and the latter accepting it, using the forms on the back of the policy, Nanny gave it to the agent of the company and requested that consent to the assignment be endorsed

thereon by the secretary. The agent sent it to the company at its main office in Topeka, requesting the endorsement of consent, and it was returned by the company to the agent bearing such endorsement, and the agent delivered it at once to the assignee, Nanny. There was no evidence contradicting that of the secretary, Smalley, that he never signed the consent nor authorized anyone to do so for him, so his statement in that regard must be accepted as true. But can the defendant company make and maintain a rule that no one can sign such consent but the secretary, then violate such rule itself by one of its employees signing the name of the secretary to the consent, and then take advantage of its own violation of the rule to avoid liability under the policy?

In the case of *Kimmi v. Brown County Farmers Mut. Fire Ins. Co.,* 135 Kan. 555, 11 P. 2d 706, which was an action on a fire-insurance policy against a mutual fire insurance company, it was said in the opinion:

"The application contained an inquiry if there was other insurance on the property. The answer was in the negative, and defendant contends this was a false representation which avoided the policy. As indicated, Blanche Kimmi was not asked if there was other insurance. The agent wrote the answer to the inquiry and directed her to sign the application. The company knew it had another policy on the same dwelling house for $2,000, and under the circumstances there was no wrongful concealment of a material fact affecting the risk." (p. 557.)

In the case of *Svetlicic v. Farmers Alliance Ins. Co.,* 136 Kan. 551, 16 P. 2d 956, where a second policy had been taken out in another company by the widow of the owner of the property who had already taken out one with the defendant company, and the widow canceled the second policy which she had taken out, it was held that—

". . . it would be unreasonable to consider such subsequent policy as one within the meaning of the bylaws of the defendant mutual insurance company rendering the original policy void." (Syl. ¶ 1.) (See, also, *Phoenix Mutual Life Ins. Co. v. Central States Fire Ins. Co.,* 137 Kan. 69, 19 P. 2d 696.)

In the case of *Insurance Co. v. Knutson,* 67 Kan. 71, 72 Pac. 526, it was held:

"The provisions of an insurance policy issued by a mutual fire insurance company organized under the laws of this state, and of the bylaws of the company attached to such policy, to the effect that the procuring of additional insurance on the property covered shall render the policy void unless the written consent of the company be endorsed on the policy, are waived by the failure of the company either to cancel the policy or to endorse its consent

within a reasonable time after notice to it of the additional insurance, and before loss occurs." (Syl. ¶ 1.)

We conclude that the bylaws and rules of the company are not intended to relieve the company by reason of a violation of such rules committed in its own main office, and particularly where the records of such home office in charge of the secretary showed that consent had been given to the assignment to plaintiff more than four months prior to the fire.

Viewing this consent to the assignment as valid, we should first consider whether there was a sufficient consideration to the company to support the assignment and the liability of the company to the assignee. The case of *Funk v. Insurance Co.*, 82 Kan. 525, 108 Pac. 832, was where the owner of property insured it against loss by fire and the policy contained the usual mortgage clause, and later the owner sold the property to another and assigned the policy to the vendee, and it was held that—

". . . the original premium supported the insurance of the two interests—that of the owner and that of the mortgagee—and the policy was sustained by that consideration in the hands of the assignee. . . ." (Syl.)

It is said under the heading of "Assignment of Policy," in 26 C. J. 132, that—

"The exemption of insurer from further liability to the original insured and the premium for the unexpired term constitute a good consideration for the new promise upon the part of the insurer."

In 14 R. C. L. 1007 it is said:

"It is abundantly settled that on a sale and transfer of property covered by a policy of insurance, and an assignment of the policy to the purchaser, duly assented to by the company, a new and original contract of insurance arises between the insurance company and the assignee, which the latter may enforce without regard to what may have occurred prior to the assignment."

In 2 Cooley's Briefs on Insurance, 2d ed., page 1761, it is said:

"An assignment of a policy of insurance with the consent of the company to a purchaser of the interest of the insured constitutes a new contract between the assignee and the company; the terms of the policy constituting the basis of the new contract."

Appellant cites *Smith v. Miami Farmers Mutual Fire Ins. Co.*, 125 Kan. 10, 262 Pac. 552, as to an oral request of the insured for a renewal of the policy after the term covered by the policy should expire and the secretary promised orally that he would attend to it.

Such oral agreement was held not to be sufficient under the bylaw requiring the application to be in writing and attached to the policy.

Appellant also cites the decision in *Cure v. Insurance Co.*, 109 Kan. 259, 198 Pac. 940, where it was held:

"To constitute a waiver of a contract right, there must be a clear, unequivocal and decisive act of the party showing an intention to relinquish the right, or acts amounting to an estoppel on his part." (Syl. ¶ 2.)

This was a life-insurance case where the first premium was paid after the death of the applicant and before the policy had been delivered.

Appellant urges that the defects in the title of the plaintiff, which title he received by quitclaim deed from Peter Wachter, whose title was based upon a sheriff's deed in a tax foreclosure action, and which tax deed was later set aside, are fatal under the bylaws requiring unconditional ownership. But plaintiff had all the title Wachter had, be it much or little, and in addition he had an assignment of the policy by Viventi and a bill of sale for the furniture. The former owner, Viventi, by assigning the policy to the plaintiff was surrendering any right he may have had in the property as far as the insurance company is concerned. There was no conditional ownership involved. The matter of unpaid taxes, urged by appellant, we think, does not affect the rights of the parties other than the issuance of the sheriff's deed therefor, which was subsequently set aside.

We think the consent to the assignment of the policy constituted a new contract of insurance in favor of the plaintiff on which the premium originally paid by the assignor carried the policy many months past the date of the assignment and consent thereto, which new contract may be enforced without regard to what may have occurred prior to the assignment and the consent thereto.

We find no error in the rulings of the trial court on the demurrer to the evidence, the motion for a new trial, or the rendition of judgment for plaintiff.

The judgment is affirmed.