No. 34,198

Ora O. Reser, *Appellee*, v. The Southern Kansas Mutual Insurance Company, *Appellant*.

(91 P. 2d 25)

Opinion filed June 10, 1939.

*E. J. Taggart,* of Wellington, *M. A. Bender,* of Holton, *W. L. Cunningham, D. Arthur Walker* and *Wm. E. Cunningham,* all of Arkansas City, for the appellant.

*Albert M. Cole,* of Holton, for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: This was an action to recover on an insurance policy issued by a mutual fire insurance company. Plaintiff prevailed, and defendant appealed.

The issues were developed by the pleadings, which included a copy of plaintiff's application for insurance, the bylaws, and the policy. The term was for three years from April 21, 1936. The

premium thereon, $36.80, was paid. The insured property was a dwelling house and barn on an eighty-acre farm in Jackson county owned by Ora O. Reser and Elsia B. Reser, his wife. The barn was insured for $800. In the application for insurance were certain questions, some of which, together with the answers thereto, read thus:

"2. How much encumbrance? To whom and when due? A. None.

"5. How many fire losses have you had? If any, give details on back hereof. A. None."

Incorporated in the policy were the bylaws, some of which read:

"ARTICLE X. This company may appoint soliciting agents, but no such agents shall have authority to bind the company by any contract. All such agents shall give bond as the board of directors may require.

"ARTICLE XII. The application, bylaws and policy constitute the entire contract between the company and the insured, and no officer, agent, or representative of the company is authorized, empowered or permitted to make any verbal agreement in reference to any matter pertaining thereto."

"ARTICLE XVIII—*Avoidance of Policy.* This entire policy, each and every item thereof, shall be void if the insured has concealed or misrepresented in writing or otherwise, any material fact or circumstance concerning the insurance or the subject thereof. . . .

"This entire policy, each and every item thereof, unless otherwise provided by agreement endorsed thereon, or added thereto by the secretary, shall be void. . . . If the hazard be increased by any means, . . . or if the property be or becomes encumbered by mortgage or other lien."

The application concluded thus:

"I warrant the foregoing application to contain a full and true statement as to the condition, situation, value, occupancy and title of the property to be insured; and I warrant the answer to each of the foregoing questions to be true; and it is expressly understood and agreed that the company will not be bound by any act or agreement made to or by the agent restricting its rights or waiving its written or printed contract. I also agree to be bound by the conditions and requirements set forth in the policy and bylaws of this company.

"Dated on this 21st day of April, 1936.

"Agent's signature: WALTER NELSON.

"ORA O. RESER, *Applicant,*

ELSIA B. RESER, *Applicant."*

"In witness whereof, the said company has caused these presents to be signed by its president and attested by its secretary at its office in Wellington, Kansas.

(Signed) FRANK T. BARLOW, *Secretary.*

[FLOYD N. ANDERSON, *President.*]"

On May 14, 1936, in consideration of an additional premium of $19 the policy was extended to cover household goods in the sum of $1,000, endorsed thus:

"(Signed)     R. L. HAINSWORTH,

R. L. HAINSWORTH, *Asst. Secy.*

"All other terms and conditions of the policy remain unchanged."

On September 3, 1936, plaintiff obtained a decree of divorce from his wife, and the trial court at the same time approved a stipulation between the litigants for a division of their real and personal property, and that the wife should have judgment for $1,000 as permanent alimony. The trial court gave judgment accordingly. In that judgment Ora O. Reser was decreed to be the sole owner of the 80-acre farm, subject to a lien for $1,000 as permanent alimony to the defendant, Elsia B. Reser, payable on or before March 1, 1938. The judgment in the divorce action specifically decreed—

"That defendant have a first lien upon the real estate above described [the 80-acre farm whose buildings were insured by defendant] to secure the payment of said sum awarded as alimony."

Some time after that judgment in divorce was rendered, plaintiff called on the local agent of defendant, Walter Nelson, and told him about his divorce and that he had become the sole owner of the insured property and that his divorced wife had secured the household goods and a judgment for $1,000 against him, and stated his desire to have the insurance on the household goods for $1,000 changed to cover other property as follows:

"$200.00 on barn No. 1, making total insurance of $1,000.
     100.00 on hay therein.
      50.00 on harness.
      50.00 on implements.
     100.00 on grain in barn No. 1."

and $500 on other property of no present concern.

The agent Nelson assured plaintiff "that he would secure amendments to the policy in accordance with the changes in the ownership of the property."

On October 12, 1936, plaintiff's barn and contents, hay, harness, implements and grain, were destroyed by fire.

An adjuster for defendant called on plaintiff and took his statement touching the fire loss. In it plaintiff admitted that he had suffered the loss of a dwelling in Topeka by fire about five years previously; and he also admitted that the property on which the

insured barn was situated was subject to a judgment lien for $1,000 payable within two years.

About two months after the fire loss, on December 11, 1936, an attorney for plaintiff addressed a letter to defendant touching its failure to adjust and pay the insurance. His letter concluded thus:

"Kindly let us know if you have any reason why the loss should not be adjusted without any further delay."

On December 24, 1936, defendant sent its check to plaintiff, returning the entire premium, $55.80, with the information that the policy had been canceled. On the same day the defendant company, by its attorney, answered plaintiff's attorneys' letter of December 11, denying liability on two grounds, viz.:

"24th December, 1936.

. . . . . . . . . . . . . . .

"First: The insured misrepresented to the company he had had no other fire losses. The policy was issued on this representation. Second: It appears Mr. Reser had a divorce proceeding in Jackson county, Kansas, and that he agreed and consented a lien should be adjudged against the real estate and property covered by the policy to secure the payment of the alimony judgment given his wife. It appeared this lien was arranged and provided for by the insured and that the court confirmed and ratified the arrangements.

"It appears to me this lien would have the same status as a mortgage lien, under the conditions above stated. The lien was created by the insured and was a voluntary encumbrance. This constitutes a violation of the policy and on the creation of the judgment lien, in my judgment, the insurance contract then and there became void.

"For the above reasons I do not consider the policy was at any time a valid contract, at least not after the judgment lien was created, and I am enclosing a check, payable to the insured, for the full amount of the premium paid by him for this policy."

This lawsuit followed, and from the judgment in favor of plaintiff defendant presents three questions for appellate review, viz.:

"1. Was the policy rendered void by false statement in the application which was attached to the policy?

"2. Was the policy rendered void by reason of a judgment rendered against the plaintiff, after the policy was issued, and before the fire, and which judg-· ment was made a specific lien on the insured property?

"3. Should the plaintiff have been denied the right to recover for the loss of personal property, because of failure to make proof of loss as required by the policy?"

Disposing of the third question first, it will be sufficient to say that in defendant's attorney's letter of December 24 no mention was made of the failure of plaintiff to make verified proof of loss

within 60 days as one of its grounds for denying liability. Waived then, it was not good thereafter, either in the trial court or this court. (*Svetlicic v. Farmers Alliance Ins. Co.*, 136 Kan. 551, 16 P. 2d 956.)

Error is assigned on the want of significance given by the trial court to the false answer to the question in plaintiff's application for insurance which sought to ascertain whether he had theretofore suffered a fire loss. The application contained a negative answer to that pertinent question. The truth was that on December 9, 1930, plaintiff had sustained a fire loss on certain Topeka city property. The bylaws which constituted part of the insurance contract in the case at bar provide that such a misrepresentation renders the policy void. Moreover, plaintiff expressly warranted the answers in his application to be true, and he agreed to be bound by the bylaws.

To surmount this barrier to a recovery, plaintiff relies upon the agreed statement of facts to this effect: Walter Nelson was the agent for defendant. Nelson told plaintiff that he himself could answer the questions in the application, and handed a blank application to plaintiff, which he signed. It was further agreed that at the time of the earlier fire in December, 1930, Nelson was the agent of the insurance company which carried the risk—not, however, the defendant in this case.

The general rule of law is that where one person signs and delivers to another person an instrument containing blank spaces to be filled in, he impliedly authorizes the person to whom such instrument is delivered to fill in the blanks. (*Cassetta v. Baima*, 106 Cal. App. 196, 288 Pac. 830; *Lloyd v. American Can Co.*, 128 Wash. 298, 222 Pac. 876; 2 C. J. 1242 *et seq.*; 3 C. J. S. 976-977.) The purpose of signing an instrument is to authenticate its contents and to bind the signer. (*Gentry's Guardian v. Gentry*, 219 Ky. 569; 293 S. W. 1094, Black's Law Dictionary, 2d ed., 1088.) Signing an instrument whose details are to be filled in afterwards does not differ in principle from signing a completely written contract or other instrument without reading it. Ordinarily such a signer is bound by its terms. In *Minneapolis-Moline Power Imp. Co. v. Beck*, 139 Kan. 245, 249, 30 P. 2d 1085, it was said:

"It is settled law everywhere that one who puts his name to a written agreement cannot escape the binding force of his signature on the mere excuse that he assumed the blank spaces would be filled out according to his intention, nor on the excuse that he did not read its contents. (Citations)."

In view of this rule of law the falsity of the answer to question No. 5 in the application must be considered as if it had been written therein before plaintiff signed it. However, a related question immediately intrudes. Nelson, the agent for defendant in the instant case, had been agent for whatever insurance company it was which carried the fire risk for plaintiff on his Topeka property when it burned in 1930. Nelson knew that the question No. 5 in plaintiff's application required an affirmative answer with details. Nelson inserted a false answer. In the agreed facts it is stipulated that Nelson had given the false answer, not because he had forgotten the fact of plaintiff's earlier fire loss, but because plaintiff's Topeka fire "had been so long ago he didn't think it made any difference and had therefore left it out."

Under these circumstances if defendant were an old-line fire insurance company, we would probably hold that the knowledge of Nelson was tantamount to notice to his principal. The law books have much to say on this subject, and the authorities they cite are by no means all on one side. (See 2 Couch on Insurance Law, sec. 525 *et seq.;* 2 Mechem on Agency, 2d ed., sec. 1802 *et seq.*) Our own cases have rather rigorously ruled against insurers under a variety of not materially dissimilar circumstances. (*Continental Ins. Co. v. Pearce,* 39 Kan. 396, 18 Pac. 291; *Pfiester v. Insurance Co.,* 85 Kan. 97, 116 Pac. 245; *Palin v. Insurance Co.,* 92 Kan. 401, 140 Pac. 886; *Mercantile Co. v. Insurance Co.,* 101 Kan. 522, 525, 168 Pac. 323.)

The rule attributing to a principal the knowledge of its agent is not applied to cases of insurance brokers who are regarded as agents of the insured rather than the insurer. (*Rosedale Securities Co. v. Home Ins. Co.,* 120 Kan. 415, 243 Pac. 1023; *Riddle v. Rankin,* 146 Kan. 316, 324, 69 P. 2d 722.)

On the other hand, mutual fire insurance companies which were originally founded as a matter of legislative policy to enable farmers to obtain insurance at low cost have always been regarded as favorites in Kansas law. After flourishing for a generation, whether they are now fundamentally different from other fire insurance companies may fairly be questioned; but if not, the legislature alone can change the state's policy toward them. Their favored status has been written too deeply and too frequently to change that policy by judicial decree. (*Lohr v. Farmers Alliance Ins. Co.,* 144 Kan. 776, 778, 62 P. 2d 837.)

The authority to declare the public policy of the state is vested in the legislature, not in the judiciary. (*Smith v. Fuest,* 125 Kan. 341, 263 Pac. 1069.) In *United States v. Freight Association,* 166 U. S. 290, 340, it was said:

"The public policy of the government is to be found in its statutes. . . . when the lawmaking power speaks upon a particular subject, over which it has constitutional power to legislate, public policy in such a case is what the statute enacts."

Court decisions in respect to public policy are helpful only as they seek to interpret and apply the state's public policy to particular cases. Since this defendant was a mutual insurance company, those who accept its policies of insurance are in effect members of the defendant mutual organization. (G. S. 1935, 40-1008.) The statute requires so much of its bylaws as pertains to the particular risk to be included in the insurance contract. (G. S. 1935, 40-1017.) "For all purposes of the law, the legislature has prescribed the terms and effect of mutual fire insurance policies." (*Akers v. Farmers Alliance Ins. Co.,* 118 Kan. 241, 245, 234 Pac. 956.)

Counsel for appellee argue that the agent William Nelson was not a mere soliciting agent, but a general agent, and on that assumption it is contended that he "had general authority in connection with the issuance of the policy in the defendant company." Since a mutual fire insurance contract like that now before the court is comprised of three elements—the application, the bylaws, and the policy, neither more nor less—it is difficult to see how its regular insurance contract could be altered even by a general agent. Furthermore, we look in vain for anything in the insurance contract as an entirety, or in the stipulation of agreed facts, which would indicate that Nelson was a general agent. Counsel for appellee calls attention to a feature of the application relating to chimneys and stovepipes thus:

"CHIMNEYS: How many are built from the ground? ——— From 1st story? ———.

"STOVEPIPES: How many pass through roof? ——— Through side of building? ——— If so, decline. . . . Does any pipe pass through garret or unoccupied room? ——— If so, decline."

Appellee argues that since the agent must ascertain these facts he is more than a soliciting agent. On the contrary, if any stovepipes had passed through the side of the building or through an unoccupied room, the agent did not have the slightest discretion. He was under imperative instructions to decline the risk. That is very far indeed from being indicative that Nelson was a general agent.

It is also argued that the insurance contract nowhere shows that Nelson was forbidden to make any oral arrangement or agreement with plaintiff. Perhaps so, but the powers of an agent to act for his principal are not to be construed to include all sorts of authority except what is expressly forbidden. The correct rule of law touching the powers of an agent is that he has whatever authority is specifically or apparently conferred upon him, together with whatever additional authority is reasonably to be implied so as to enable him to accomplish the purposes of his agency effectively. (*Siedhoff v. Campbell*, 141 Kan. 255, 40 P. 2d 404, and citations.)

On this particular assignment of error this court holds that the false answer to question 5 must be viewed as if plaintiff and Nelson had agreed between themselves that the fact of plaintiff's fire loss should be concealed from the insurance company. In *Kane v. Detroit Life Ins. Co.*, 204 Mich. 357, 170 N. W. 35, it was held that an insurance company is not bound by statements contained in an application for insurance, when not only the agent, but the assured, knew that they were untrue, and calculated to deceive, and such application was submitted to the insurance company as the basis of its action. In *Smith v. Iowa St. L. S. Ins. Co.*, 195 Ia. 250, 191 N. W. 981, it was held that the knowledge of an agent of an insurance company of material, false representations on the part of an applicant for insurance, relative to the subject matter of the insurance, may not be imputed to the company when the agent was manifestly in league with the applicant and bent on defrauding the company. In accord with these Michigan and Iowa cases are *Klein v. Supreme Council of Loyal Ass'n*, 155 N. Y. Supp. 580, and *Green v. Hanover Fire Ins. Co.*, (Tex. Civ. App. 1924) 264 S. W. 153. Only the last of these cases involved fire insurance, but the principle is applicable to all sorts of cases where the agent colludes with an applicant for insurance to withhold from the insurance company any facts material to the risk which it is entitled to know before it decides to make the insurance contract. See, further, 2 Mechem on Agency, 2d ed., sec. 1826.

In view of the conclusion reached on the appellant's first assignment of error, it might be regarded as superfluous to consider the second error urged on our attention. But we have concluded to consider it.

It is contended that the judgment rendered in the divorce case on September 3, 1936, subjecting plaintiff's farm to a lien for $1,000

*ipso facto* avoided the policy. Such was the plain and unequivocal declaration of the bylaws. See article XVIII quoted above, which was an integral part of the insurance contract.

To overcome this barrier to a recovery plaintiff directs our attention to some pertinent language in the agreed statement of facts:

"That shortly after the divorce plaintiff went to the office of Mr. Nelson [agent for defendant] and informed him that he had secured a divorce from his wife, that he was now the sole owner of the property, and that she secured the household goods and a judgment for $1,000 against him. That he wanted the insurance on the household goods as disclosed by the endorsement to the policy dated May 14, 1936, changed to cover the risks and amounts shown by the endorsement of October 14, 1936, and further requested him to secure an amendment to the policy in accordance with the new status of his ownership of the property. That Nelson informed him that he would secure amendments to the policy in accordance with the changes in the ownership of the property."

It must be noted, however, that in this paragraph of the stipulated facts no mention was made of the fact that the $1,000 judgment against plaintiff was declared to be a specific lien on the farm whose buildings were insured by defendant—or, to speak more accurately, the farm whose buildings had been insured by defendant up to the date of September 3, 1936, when the judgment was rendered. Moreover, that judgment for alimony was made a specific lien on plaintiff's farm pursuant to an agreement of parties in the divorce action. This is important because the precise language of the bylaws reads:

"This entire policy, each and every item thereof, unless otherwise provided by agreement endorsed thereon, or added thereto by the secretary, shall be void. . . . If the hazard be increased by any means, . . . or if the property be or becomes encumbered by mortgage or other lien."

Laying aside the serious question whether Nelson had any authority to make an oral agreement to get defendant's consent to carry the insurance on the property after it became encumbered with a judgment lien, the stipulated facts do not even say that plaintiff told Nelson that the $1,000 judgment had been decreed to be a specific lien on the farm. Moreover, any arrangement between plaintiff and the defendant insurance company that it should continue to carry the insurance, whether made through Nelson as intermediary, or as soliciting agent, or as general agent, or otherwise, would have to start with the fact that the insurance was avoided on September 3, 1936, when the judgment lien was imposed; and

that only by some negotiations approved by the defendant could such reinstatement be effected. Of course, nothing of the sort was done, and what Nelson did do or agreed to do could not alter the fact that the insurance contract terminated by the specific terms of the bylaws when the judgment lien was imposed on the insured property on September 3, 1936.

In *Kennedy v. Farmers Alliance Ins. Co.*, 127 Kan. 768, 275 Pac. 214, the case and the decision are tersely stated in the second paragraph of the syllabus:

"A bylaw of such a company provided that a policy should be void, unless otherwise provided by agreement endorsed thereon or added thereto by the secretary, if the interest of the insured be other than unconditional or sole ownership, or if the subject of insurance be personal property encumbered by a chattel mortgage. A policy of insurance was issued which had no such agreement endorsed thereon or added thereto, and the subject of the insurance was personal property then encumbered by a chattel mortgage and title notes. *Held,* that the policy was not valid."

Later cases governed by the same general rule of law are *Jackson v. Republic Mutual Fire Ins. Co.*, 138 Kan. 571, 57 P. 2d 296; and *Union Central Life Ins. Co. v. Zehr,* 143 Kan. 910, 57 P. 2d 51.

It must be held that plaintiff's voluntary consent that a judgment for $1,000 in the divorce action should be entered against him and that such judgment should be a lien on the premises covered by the policy of insurance issued by defendant avoided the policy as the bylaws provided.

The judgment is therefore reversed and the cause remanded with instructions to enter judgment for defendant.